JOHNSON, Chief Judge.
This matter is before us ■ on a certified question from the Circuit Court, First Judicial Circuit, Honorable William Frye, III, Judge.
The question submitted is as follows:
Where property taken for a roadway dirt borrow pit had as its highest and best use prior to the taking that of rural home sites, may evidence be admitted as to value of the property on a per cubic yard basis for dirt borrow where the value as dirt borrow has been created by the taking?
It appears from the statement of facts that there are two borrow pits involved, comprising 38.S acres in one and 25 acres in the other. That these pits are a part of a large tract of land.
The defendants in the condemnation suit, at the time of trial, attempted to proffer into evidence (1) the approximate number of cubic yards of dirt to be removed from each pit, (2) that there were already on said tract of land two borrow pits from which the owners were selling fill dirt to contractors at ten cents per yard, (3) that there was a considerable amount of earth moving in Okaloosa County and said dirt was being sold on a “stumpage” basis — that is, so much per yard; (4) that a recent sale by the same owners had been made in close proximity of the area in question for a borrow pit at $476.00 per acre. Also it was proffered to show that the State Road Department in Santa Rosa and Okaloosa Counties was selling dirt to contractors at from one to eight cents per cubic yard and in Okaloosa County, the Road Department had allowed the contractors to buy their own fill from private owners and that the price was three cents per cubic yard, whereas the Road Department was charging from three to eight cents per yard from the Road Department pits.
The trial court denied all proffers and confined the evidence to market value of the property taken, predicated solely upon timberland value.
Value, as used in eminent domain statute ordinarily means the amount which would be paid for the property on the assessing date to a willing seller not compelled to sell, by a willing purchaser, not compelled to purchase, taking into consideration all uses to which the property is adapted and might reasonably be applied.[1]
The uses to which the property is adapted and might reasonably be applied, must be so reasonably probable as to have an effect upon the market value at the time of taking. Whether or not there is a reasonable probable use of this property for a purpose other than timberlands, will depend upon the proximity of the other borrow pits on said land, the accessibility thereto and the probable need therefor in the foreseeable near future.- These are questions which a jury should be allowed to determine and it appears to us from the brief statement of facts given us that the land in question may have a probable near future use for a borrow pit for private sales of dirt therefrom which would render the market value of said land for such purpose far in excess of the market value for tim-berlands only.
In view of the fact that the land taken is good for fill dirt, whereas all lands are not, and in view of the fact that there are other borrow pits on this land in close proximity to the land in question, it is our opinion, and we so hold, that these are factors which a jury could take into consideration in arriving at fair market value within the meaning of the Constitution and statutes, and therefore, the proffered evidence should have been admitted, not as con *861 trolling or as the measure of value, but as a factor, affecting the market value.[2]
The question certified to us, is answered in the affirmative, with the limitations stated supra.
CARROLL, DONALD K., J., concurs.
RAWLS, J., dissents.

. Casey v. Florida Power Corporation, 157 So.2d 168, (Fla.App.2d, 1964).

. People v. Ocean Shore Railroad, Inc., 32 Cal.2d 406, 196 P.2d 570, 6 A.L.R.2d 1179.